# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

|  |  |
|---|---|
| AMF BRUNS AMERICA, L.P., | CASE NO. 5:23-CV-01634 |
| Plaintiff, | |
| vs. | MAGISTRATE JUDGE AMANDA M. KNAPP |
| VANTAGE MOBILITY INTERNATIONAL, L.L.C., | **<u>MEMORANDUM OPINION & ORDER</u>** |
| Defendants. | |

This case arises out of a contract dispute between Plaintiff AMF Bruns America, L.P. ("AMF Bruns") and Defendant Vantage Mobility International, L.L.C. ("VMI") where AMF Bruns alleged that VMI's nonpayment for certain orders of goods was a breach of contract. (*See* ECF Doc. 5 (Amended Complaint ("Am. Compl.")); ECF Doc. 8 (Answer to Amended Complaint ("Answer")).)  AMF Bruns filed a Motion for Partial Judgment on the Pleadings and Partial Summary Judgment (ECF Doc. No. 26 ("Motion")), which VMI did not oppose.  AMF Bruns did not seek judgment as to damages in its Motion. (*See* ECF Docs. 26, 29.)

On May 31, 2024, the Motion was granted in part and denied in part. (*See* ECF Doc. 29, p. 1, 15.)  The Court granted the Motion as to VMI's liability for breach of contract but denied the Motion as to VMI's mitigation defense. (*Id.* at p. 1, 7-10, 15.)  AMF Bruns then requested further proceedings to establish damages. (ECF Doc. 30, p. 2.)  The Court granted AMF Bruns's Motion to Withdrew Jury Demand (ECF Doc. 31; Non-Document Order 6/18/2024) and the

parties consented to the jurisdiction of the undersigned Magistrate Judge for further proceedings, pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73 (ECF Doc. 34).

The parties submitted proposed stipulated facts on July 3, 2024, and the undersigned conducted a bench trial on the issue of damages on July 10, 2024; AMF Bruns's general manager Michael Rhodes testified at the trial and Plaintiff's Trial Exhibits 1 through 8 were admitted into evidence. (ECF Docs. 37-39, 41.) AMF Bruns submitted proposed findings of fact and law on July 17, 2024. (ECF Doc. 40.) VMI did not submit proposed findings of fact or law.

The Court now issues its findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure. These findings represent the Court's conclusions after observing the testimony and considering all evidence in light of applicable law.

## I.      FINDINGS OF FACT

1.      Plaintiff AMF Bruns is a Georgia limited partnership with a principal place of business at 1797 Georgetown Road, Hudson, Ohio 44236. (Am. Compl., p. 2, ¶ 7; Answer, p. 2, ¶ 7.) AMF Bruns's business involves vehicle technology for wheelchair passengers; it sells products to customers who manufacture or convert vehicles for use in transporting wheelchair passengers. Some of AMF Bruns's business involves "kitting"—bringing together various parts that customers can order as a kit using a single part number. (Transcript of Bench Trial ("Trial Tr."), 6:7-16, 7:12-16.)

2.      Defendant VMI is a limited liability company organized under the laws of the State of Arizona, with its principal place of business located at 5202 South 28th Place, Phoenix, Arizona 85040. (Am. Compl., p. 2, ¶ 8; Answer, p. 2, ¶ 8.) VMI's business includes the manufacture of minivans for personal mobility solutions. (Trial Tr., 8:11-13.)

3.      VMI became a customer of AMF Bruns in early 2021. (*Id.* at 8:5-6.)

4.      At that time, VMI was manufacturing a 12- to 14-passenger van intended for use in the paratransit sector.  The van had a rear entry that allowed the loading of wheelchair passengers, and the seats in the van could be moved and positioned to create stations where wheelchairs could be secured within the van.  The floor of the van had aluminum tracks and holes in the floor to allow the positioning of seats in different places on the floor.  (Trial Tr., 8:14-19, 9:23-10:9, 10:11-23; Trial Exs. 1, 2.)

5.      The seats in the van had steel tube legs that were attached to the floor using four mounting brackets and bolts.  VMI purchased these "mounting kits" from AMF Bruns.  (Trial Tr., 10:25-11:20; Trial Exs. 3, 4.)

6.      The business dealings between AMF Bruns and VMI followed a pattern.  VMI sent purchase orders to AMF Bruns via email, after which AMF Bruns confirmed the purchases using a sales order.  When AMF Bruns confirmed a purchase using a sales order, it confirmed the pricing, availability, need-by date, and other information contained in VMI's purchase order. (Trial Tr., 11:21-12:10.)

7.      VMI admits that it ordered products from AMF Bruns between August 23, 2021, and May 13, 2022, that VMI issued purchase orders, and that AMF Bruns issued corresponding sales orders.  (Answer, pp. 3-4, ¶¶ 15-18; *see also* Am. Compl., pp. 3-4, ¶¶ 15-18.)

8.      AMF Bruns received VMI's last payments on those purchase and sales orders in April 2022.  The last payments were for products AMF Bruns had shipped in the fourth quarter of 2021.  AMF Bruns continued shipping products to VMI through June 2022, but VMI did not submit payment for the shipments AMF Bruns made in 2022.  (Trial Tr., 26:18-27:3.)

9.      The parties stipulate that AMF Bruns shipped products to VMI pursuant to the following purchase orders—70173536, 70174029, 70175056, 70176124, 70177548, 70177549—

and that VMI did not pay AMF Bruns for the products shipped under those orders, as set forth below:

| Purchase Order | AMF alleges shipment and non-payment | VMI admits shipment and non-payment |
|---|---|---|
| 70173536 | First Am. Compl, Doc. No. 5, ¶¶ 27–30, pages 6–7. | Answer, Doc. No. 8, ¶¶ 27– 30, page 5. |
| 70174029 | First Am. Compl. Doc. No. 5, ¶¶ 33–34, pages 7–8. | Answer, Doc. No. 8, ¶¶ 33– 34, page 6. |
| 70175056 | First Am. Compl. Doc. No. 5, ¶¶ 37–40, pages 8–9. | Answer, Doc. No. 8, ¶¶ 37– 40, page 6. |
| 70176124 | First Am. Compl. Doc. No. 5, ¶¶ 43–44, pages 9–10. | Answer, Doc. No. 8, ¶¶ 43– 44, page 6. |
| 70177548 | First Am. Compl. Doc. No. 5, ¶¶ 47–50, page 10. | Answer, Doc. No. 8, ¶¶ 47– 50, page 7. |
| 70177549 | First Am. Compl. Doc. No. 5, ¶¶ 55–56, page 11. | Answer, Doc. No. 8, ¶¶ 53– 56, page 7. |

(ECF Doc. 39, Agreed Upon Stipulations for Bench Trial ("Stipulations"), pp. 1-2, ¶¶ 1, 2.)

10.     The parties stipulate that the total unpaid principal for the products shipped by AMF Bruns on the above purchase orders totals $153,168.34, that the calculated interest on those orders totaled $62,038.73 as of July 10, 2024, and that the total amount due and owing to AMF Bruns by VMI for shipped products totaled $215,207.07, as set forth in the table below:

| Date | Purchase Order No. | 7/10/2024 Days | Rate per Month | Per Day (1.5% / 30) | Beginning Principal | Calculated Interest | Principal and Interest |
|---|---|---|---|---|---|---|---|
| 2/19/2022 | 17533 | 872 | 1.50% | 0.00050 | 21,644.16 | 9,436.85 | 31,081.01 |
| 2/19/2022 | 17534 | 872 | 1.50% | 0.00050 | 14,736.60 | 6,425.16 | 21,161.76 |
| 2/19/2022 | 17535 | 872 | 1.50% | 0.00050 | 10,415.88 | 4,541.32 | 14,957.20 |
| 5/14/2022 | 18371 | 788 | 1.50% | 0.00050 | 33,819.00 | 13,324.69 | 47,143.69 |
| 5/14/2022 | 18372 | 788 | 1.50% | 0.00050 | 21,644.16 | 8,527.80 | 30,171.96 |
| 5/14/2022 | 18373 | 788 | 1.50% | 0.00050 | 21,644.16 | 8,527.80 | 30,171.96 |
| 5/14/2022 | 18374 | 788 | 1.50% | 0.00050 | 6,907.56 | 2,721.58 | 9,629.14 |
| 6/2/2022 | 18572 | 769 | 1.50% | 0.00050 | 17,248.44 | 6,632.03 | 23,880.47 |
| 6/25/2022 | 18879 | 746 | 1.50% | 0.00050 | 4,395.72 | 1,639.60 | 6,035.32 |
| 7/6/2022 | 19005 | 735 | 1.50% | 0.00050 | 702.06 | 258.01 | 960.07 |
| 7/6/2022 | 19006 | 735 | 1.50% | 0.00050 | 10.60 | 3.90 | 14.50 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Total: | | | | | 153,168.34 | 62,038.73 | 215,207.07 |

(Stipulations, p. 2, ¶¶ 2, 3; Trial Ex. 5, p. 1.)

11.     In addition to the shipped orders, the parties stipulate that VMI ordered additional products, including 3-point mounting kits and 280 mm millennium flex legs, as set forth in purchase orders 70176571, 70176124, and 70182209.  (Stipulations, p. 2, ¶ 4.)

12.     After June 2022, AMF Bruns stopped shipping products to VMI because AMF Bruns had invoices from VMI that were aging to six months past due.  It was standard practice for AMF Bruns to review accounts receivable when things became past due, and to hit pause and put a hold on an account when collection attempts were unsuccessful.  (Trial Tr. 27:1-10.)

13.     AMF Bruns issued multiple sales orders in response to purchase order 70176571—including 19845, 19846, 19847, 19848, 19849, and 19850—because purchase order 70176571 was a blanket purchase order that called for smaller quantities of the products to be released to the customer on different dates.  AMF Bruns purchased the products in those sales orders but did not ship them to VMI because VMI had failed to pay for prior shipments and had outstanding invoices that were aged six months.  VMI did not pay AMF Bruns for the above sales orders.  Each sales order listed a price of $40,582.80, adding up to a total listed price of $243,496.80.  (Trial Tr., 14:4-19:19; Trial Ex. 5, p. 2; Trial Ex. 7, p. 5; Trial Ex. 8, pp. 3-8.)

14.     In response to purchase order 70176124, AMF Bruns issued sales order 019467.  Although the purchase order listed a price of $62,196.48, the sales order only listed a price of $21,644.16 because it was a partial release on the purchase order.  AMF Bruns purchased the product to fulfill the sales order and is holding the product, but did not ship the product.  VMI has not paid for the product.  (Trial Tr., 20:24-22:12, 24:8-20; Trial Ex. 5, p. 2; Trial Ex. 7, p. 4; Trial Ex. 8, p. 2.)

15.     In response to purchase order 70182209, AMF Bruns issued sales order 0024921. Although the purchase order listed a total price of $17,276.80, the sales order listed a higher price of $19,440.80 because the purchase order was generated with outdated pricing.  In the sales order, AMF Bruns confirmed the purchase at the corrected current price.  AMF Bruns purchased the product to fulfill the order but did not ship the product.  VMI has not paid for the product. (Trial Tr., 22:17-24:20; Trial Ex. 5, p. 2; Trial Ex. 7, p. 9; Trial Ex. 8, p. 9.)

16.     The payments due under purchase orders 70176571, 70176124, and 70182209, for products AMF Bruns purchased but did not ship to VMI include: $243,496.80 on purchase order 70176571; $21,644.16 on purchase order 70176124; and $19,440.80 on purchase order 70182209.  In total, the purchase prices owed for unshipped products under those purchase orders total $284,581.76.  (Trial Tr., 24:8-17; Trial Ex. 5, p. 2.)

17.     VMI asserted an affirmative defense of failure to mitigate.  (Answer, p. 10, ¶ 1.)

18.     As to mitigation of damages for the products AMF Bruns purchased but did not ship to VMI, AMF Bruns's general manager Michael Rhodes testified that AMF Bruns was not able to identify another market to sell the products, especially not in the quantities purchased to fulfill the purchase orders.  AMF Bruns had other customers who purchased seat legs, but not the type of seat legs purchased in this case, which are not a commonly sought-after leg.   (Trial Tr., 5:18-19, 19:20-20:17.)

19.     If a customer was available to purchase the unshipped products, Mr. Rhodes testified that AMF Bruns would sell the products to that customer.  (Trial Tr., 24:21-24.)

20.     Mr. Rhodes further testified that the unshipped products cannot be returned to their manufacturer because the manufacturer is an offshore company and would not accept them. (*Id.* at 24:25-25:8.)

6

21.     VMI did not present evidence to support its affirmative defense of failure to mitigate damages at the trial, and did not cross examine Mr. Rhodes or rebut his testimony.

22.     The Terms of Sale between AMF Bruns and VMI provide, in pertinent part, that: orders for custom goods like the products at issue here cannot be cancelled; AMF Bruns may withhold delivery of goods if VMI fails to fulfill the terms of payment; and VMI agrees to reimburse AMF Bruns for all costs of collection, including reasonable attorneys' fees and court costs.  (*Id.* at 25:15-26:13, 27:22-28:2; Trial Ex. 6, pp. 2, 4.)

23.     The combined total of the principal and interest owed for the shipped goods and the listed price for the unshipped goods is $499,788.83.  (Trial Tr. 27:12-18; Trial Ex. 5.)

24.     Before filing a lawsuit, AMF Bruns representatives spent about a year working with VMI in an attempt to collect the amounts owed, including requesting good faith installment payments.  AMF Bruns stopped shipping products to VMI in June 2022 due to past due invoices and did not initiate legal action to recover payment until July 2023.  (Tr. 28:13-29:23.)

25.     Mr. Rhodes also testified, without further detail or evidentiary support, that AMF Bruns has incurred approximately $70,000 in legal fees in this litigation and other attempts to collect the amounts owed from VMI.  (Trial Tr. 28:3-6.)

## II.     CONCLUSIONS OF LAW

1.     The Court has already concluded as a matter of law that: the purchase and sales orders above were valid contracts between the parties; AMF Bruns performed its obligations under those contracts, even where it did not ship the products to VMI because of VMI's prior failure to perform on the contracts; VMI failed to perform its obligations under the contracts by failing to pay AMF Bruns; and AMF Bruns suffered damage as a result.  (ECF Doc. 29.)

2.      However, the Court denied AMF Bruns's motion for partial summary judgment as to VMI's affirmative defense of failure to mitigate damages, finding AMF Bruns did not meet its initial responsibility to demonstrate the absence of a genuine dispute of material fact on summary judgment because it failed to present competent evidence to establish that it had not failed to fulfill its duty to mitigate damages.  (*Id.*)

## A.      Affirmative Defense - Failure to Mitigate

3.      "'[M]itigation is a fundamental tenet of a damage calculus.'"  *Andersons, Inc. v. Lafarge N. Am., Inc.*, 503 F. App'x 314, 320 (6th Cir. 2012) (quoting *Frenchtown Square P'ship v. Lemstone, Inc.*, 99 Ohio St. 3d 254, 257 (2003)).  "As a general matter, a plaintiff seeking redress for breach of contract has a duty to mitigate."  *Dean Tech., Inc. v. CE Power Sols., LLC*, 96 F. Supp. 3d 736, 752 (S.D. Ohio 2015) (citing *F. Enterprises, Inc. v. Kentucky Fried Chicken Corp.*, 47 Ohio St. 2d 154, 159-60 (1976)).

4.      Nevertheless, "[f]ailure to mitigate damages is an affirmative defense . . ., and the burden of proving the defense lies with the party asserting it."  *Massillon Mgmt., LLC v. Americold Realty Tr.*, No. 5:08CV00799, 2009 WL 10720178, at *11 (N.D. Ohio Apr. 17, 2009) (citing *Young v. Frank's Nursery & Crafts, Inc.*, 58 Ohio St. 3d 242, 244 (1991) and *Spalding v. Coulson*, 147 Ohio App. 3d 371, 378 (8th Dist. 2001)).  "Whether an injured party used reasonable care to avoid damages presents a question of fact."  *First Fin. Bank, N.A. v. Cooper*, 2016-Ohio-3523, ¶ 23, 67 N.E.3d 140, 146 (1st Dist.) (quoting *Pinnacle Mgt. v. Smith*, No. CA2003–12–327, 2004-Ohio-6928, ¶ 12 (Ohio Ct. App (2004)).

5.      Here, VMI did not present evidence to support its affirmative defense and did not otherwise challenge the testimony of Mr. Rhodes regarding the actions taken by AMF Bruns to mitigate damages with respect to the products purchased by AMF Bruns but not shipped to VMI.

8

6.      VMI has failed to prove that AMF Bruns did not mitigate its damages.

**B.     Contract Damages**

7.      Under Ohio law, "'[d]amages for a breach of contract are those which are the natural or probable consequence of the breach of contract or damages resulting from the breach that were within the contemplation of both parties at the time of the making of the contract.'" *Micrel, Inc. v. TRW, Inc.*, 486 F.3d 866, 878 (6th Cir. 2007) (quoting *The Toledo Group, Inc. v. Benton Indus., Inc.*, 87 Ohio App. 3d 798, 806-07 (1993)).

8.      When the buyer in a contract for sale of goods has failed to pay a contract price that is due, Ohio law establishes that the seller may recover "the price: (1) of goods accepted . . .; and (2) of goods identified to the contract if the seller is unable after reasonable effort to resell them at a reasonable price or the circumstances reasonably indicate that such effort will be unavailing." Ohio Rev. Code § 1302.83(A)(1)-(2); *see also* Ohio Rev. Code § 1302.65(A) ("The buyer must pay at the contract rate for any goods accepted.").

Products AMF Bruns Shipped to VMI

9.      As to the purchase orders for which AMF Bruns shipped the product to VMI—70173536, 70174029, 70175056, 70176124, 70177548, 70177549—the parties have stipulated that: the total unpaid principal under those purchase orders totals $153,168.34; the calculated interest on those orders totaled $62,038.73 on July 10, 2024; and the total amount due and owing to AMF Bruns by VMI for shipped products as of the date of the bench trial was $215,207.07.

10.     Thus, as to VMI's breach of purchase orders 70173536, 70174029, 70175056, 70176124, 70177548, 70177549, the Court finds that VMI is liable to AMF Bruns under Ohio Rev. Code § 1302.83(A)(1) for the price of goods accepted in the amount of $215,207.07.

Products AMF Bruns Purchased but Did Not Ship

11. As to the purchase orders for which AMF Bruns ordered the products but did not ship the products to VMI—70176571, 70176124, and 70182209—the evidence shows that the total purchase price set forth in the relevant sales orders is $284,581.76.

12. Mr. Rhodes testified that AMF Bruns purchased the products pursuant to the sales orders, was not able to return the products to the manufacturer, was not able to identify a market to sell the products because they are unique and not commonly sought after, continued to hold the products at the time of the trial, and would sell the products if a buyer could be identified.

13. Thus, as to VMI's breach of purchase orders 70176571, 70176124, and 70182209, the Court finds that VMI is liable to AMF Bruns for the price of goods identified in the contract—totaling $284,581.76—because the circumstances reasonably indicate that AMF Bruns would be "unable after reasonable effort to resell the [products] at a reasonable price," as provided in Ohio Rev. Code § 1302.83(A)(2).

14. For the reasons set forth above, the Court awards contract damages to AMF Bruns in the total amount of $499,788.83, which is made up of: $153,168.34 in unpaid principal on the shipped orders; 18% annual interest on the shipped orders, totaling $62,038.73 as of July 10, 2024; and the contract price of $284,581.76 on the unshipped orders.

## C.  Attorney Fees

15. Each party is responsible for its own attorney's fees under Ohio law, unless an exception applies; but contractual provisions obligating a party to pay attorneys' fees are one exception.  *See McConnell v. Hunt Sports Ent.*, 132 Ohio App. 3d 657, 699 (1999).

16.     Here, the Terms of Sale governing the relationship between AMF Bruns and VMI provide that VMI agrees to pay "for all costs of collection, including reasonable attorneys' fees and court costs" in connection with delinquent accounts.  (Trial Ex. 6, p. 2, ¶ 3.)

17.     The decision to award attorney fees "rests in the sound discretion of the trial court."  *Jones v. Cont'l Corp.*, 789 F.2d 1225, 1229 (6th Cir. 1986).  "[T]he primary concern is that the fee awarded be 'reasonable.'"  *Gonter v. Hunt Valve Co.*, 510 F.3d 610, 616 (6th Cir. 2007) (citing *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999) and *Blum v. Stenson*, 465 U.S. 886, 893 (1984)).  "[A] reasonable fee is 'adequately compensatory to attract competent counsel yet which avoids producing a windfall for lawyers.'"  *Id.* (quoting *Geier v. Sundquist*, 372 F.3d 784, 791 (6th Cir. 2004)) (additional citation omitted).

18.     "The trial court's initial point of departure, when calculating a 'reasonable' attorney fee, should be the determination of the fee applicant's 'lodestar,' which is the proven number of hours reasonably expended on the case by an attorney, multiplied by his court-ascertained reasonable hourly rate."  *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 349 (6th Cir. 2000) (citing *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983) and *Reed*, 179 F.3d at 471).

19.     "To justify any award of attorneys' fees, the party seeking compensation bears the burden of documenting its work."  *Gonter*, 510 F.3d at 616 (citing *Reed*, 179 F.3d at 472 and *Webb v. County Bd. of Educ.*, 471 U.S. 234, 242 (1985)).

20.     Here, the sole evidence presented in support of AMF Bruns's request for an award of attorneys' fees is the conclusory testimony of Mr. Rhodes that AMF Bruns incurred $70,000 in attorneys' fees in connection with this action and other collection efforts.  No supporting documentation was presented to the Court to establish the number of hours spent by AMF Bruns's counsel, the nature of the services provided, or the hourly rate(s) charged.

21.     Without supporting documentation, the Court finds that AMF Bruns has not met its burden to establish the amount of the attorneys' fees incurred in support of its collection efforts or the nature of the services provided by its counsel, leaving this Court unable to engage in the necessary process of calculating the "reasonable" attorneys' fees that may be awarded.

22.     Accordingly, the Court denies AMF Bruns's request for attorney fees.

### III.     CONCLUSION

For the reasons set forth above, as supported by the findings of fact and conclusions of law, the Court **AWARDS** AMF Bruns judgment in the amount of $499,788.83 and **DISMISSES** this case in its entirety according to the terms set forth herein.

December 9, 2024

*/s/Amanda M. Knapp*

AMANDA M. KNAPP
United States Magistrate Judge